QUESTION: What is the status of the Charter of the City of Tamarac and, except for the provisions thereof which relate to the subject matters enumerated in s. 166.021(4), F.S., may it be amended by ordinance without referendum approval?
SUMMARY: Although the Municipal Home Rule Powers Act (Ch. 166, F.S.) nullified and repealed or converted into municipal ordinances many provisions of the Charter of the City of Tamarac as that charter existed on the effective date of the Municipal Home Rule Powers Act, October 1, 1973, the charter was apparently restored to its original status (as subsequently amended in February 1973 and March 1974) by referendum held in that city in June 1974 and may now be amended only as provided in s. 166.031. As I gather from information received from you, the City of Tamarac adopted a municipal charter in May 1971, upon referendum approval. Since that time the charter has twice been specifically amended, once in February 1973 and once in March 1974. You inquire as to the effect on the charter of the Municipal Home Rule Powers Act, Ch. 166, F.S., and of a referendum in June 1974 in which the charter was "ratified and affirmed" by the electorate of the City of Tamarac. Section 166.021(1), F.S., of the Municipal Home Rule Powers Act, provides that municipalities "may exercise any power for municipal purposes, except when expressly prohibited by law." See also s.166.021(3), id., providing that a municipality has the authority to adopt legislation concerning any subject matter upon which the state legislature may act, except, inter alia, "[a]ny subject expressly preempted to state or county government by the constitution or by general law." In order to implement this broad grant of home rule power to municipalities, s. 166.021(4) and (5), id., nullified and repealed, or converted into ordinances, many provisions of municipal charters which constituted limitations on, or pertained exclusively to, the power or jurisdiction of municipalities. However, s. 166.02l(4), id., states that nothing in Ch. 166, id., is to be construed as permitting any changes in a special law or municipal charter which affect certain subject matters enumerated therein without approval by referendum of the electors as provided in s. 166.031. None of the subject matters enumerated in s. 166.021(4), F.S., appear to relate to the types of charter provisions to which you refer. Thus, I am of the opinion that, as of the effective date of the Municipal Home Rule Powers Act (October 1, 1973), the provisions of the Charter of the City of Tamarac to which you refer were nullified and repealed or were converted into municipal ordinances. It appears, however, that subsequent to the effective date of the Municipal Home Rule Powers Act, the electorate of the City of Tamarac voted affirmatively on the question of whether the Charter of the City of Tamarac, as approved by the referendum held in May 1971 and as amended by the referenda held in February 1973 and March 1974, should be adopted as the Charter of the City of Tamarac. This question was presented in a referendum in June 1974 and was seemingly intended to counter the effect of the Municipal Home Rule Powers Act on the charter, which effect is hereinabove explained. I assume that the referendum was held pursuant to s.166.031, F.S., which establishes the general law procedure for amending municipal charters. In sum, therefore, although the Municipal Home Rule Powers Act nullified and repealed or converted into ordinances many provisions of the Charter of the City of Tamarac as that charter existed on October 1, 1973, the effective date of the Municipal Home Rule Powers Act, the charter was apparently restored to its original status (as subsequently amended in February 1973 and March 1974) by the referendum held in that city in June 1974. As such, I am of the opinion that it may not now be amended except as provided in s. 166.031, F.S. Finally, it should be noted that, with respect to that provision of the Charter of the City of Tamarac which provides that no ad valorem tax shall be levied on the real property within the City of Tamarac until such tax has been authorized by a majority of the qualified electors voting on the question of ad valorem taxation, s. 195.207, F.S. (enacted by s. 2, Ch. 72-360, Laws of Florida), states as follows: No municipal charter may prohibit or limit the authority of the governing body to levy ad valorem taxes or utility service taxes authorized under s. 167.431. Any word, sentence, phrase, or provision, of any special act, municipal charter, or other law, that prohibits or limits a municipality from levying ad valorem taxes within the millage limits fixed by s. 9, Art. VII of the state constitution, or prohibits or limits a municipality from levying utility service taxes within the limits fixed by s. 167.431, is hereby nullified and repealed. Applying this express statutory prohibition here, I am of the opinion that the specific charter provision in question is a limitation, if not a prohibition, on the authority of the governing body of the City of Tamarac to levy ad valorem taxes. Thus, until judicially determined to the contrary, it should be assumed that the readoption of that charter provision by the referendum held in that city in June 1974 was of no legal efficacy. See also s.218.23, F.S. Cf. AGO's 072-268 and 073-20. 075-223 — July 29, 1975 CITY OF TAMARAC STATUS OF MUNICIPAL CHARTER
Michael E. Zealy, Tamarac City Attorney, Fort Lauderdale
Prepared by: Gerald L. Knight, Assistant Attorney General
QUESTION: What is the status of the Charter of the City of Tamarac and, except for the provisions thereof which relate to the subject matters enumerated in s. 166.021(4), F.S., may it be amended by ordinance without referendum approval?
SUMMARY: Although the Municipal Home Rule Powers Act (Ch. 166, F.S.) nullified and repealed or converted into municipal ordinances many provisions of the Charter of the City of Tamarac as that charter existed on the effective date of the Municipal Home Rule Powers Act, October 1, 1973, the charter was apparently restored to its original status (as subsequently amended in February 1973 and March 1974) by referendum held in that city in June 1974 and may now be amended only as provided in s. 166.031. As I gather from information received from you, the City of Tamarac adopted a municipal charter in May 1971, upon referendum approval. Since that time the charter has twice been specifically amended, once in February 1973 and once in March 1974. You inquire as to the effect on the charter of the Municipal Home Rule Powers Act, Ch. 166, F.S., and of a referendum in June 1974 in which the charter was "ratified and affirmed" by the electorate of the City of Tamarac. Section 166.021(1), F.S., of the Municipal Home Rule Powers Act, provides that municipalities "may exercise any power for municipal purposes, except when expressly prohibited by law." See also s.166.021(3), id., providing that a municipality has the authority to adopt legislation concerning any subject matter upon which the state legislature may act, except, inter alia, "[a]ny subject expressly preempted to state or county government by the constitution or by general law." In order to implement this broad grant of home rule power to municipalities, s. 166.021(4) and (5), id., nullified and repealed, or converted into ordinances, many provisions of municipal charters which constituted limitations on, or pertained exclusively to, the power or jurisdiction of municipalities. However, s. 166.02l(4), id., states that nothing in Ch. 166, id., is to be construed as permitting any changes in a special law or municipal charter which affect certain subject matters enumerated therein without approval by referendum of the electors as provided in s. 166.031. None of the subject matters enumerated in s. 166.021(4), F.S., appear to relate to the types of charter provisions to which you refer. Thus, I am of the opinion that, as of the effective date of the Municipal Home Rule Powers Act (October 1, 1973), the provisions of the Charter of the City of Tamarac to which you refer were nullified and repealed or were converted into municipal ordinances. It appears, however, that subsequent to the effective date of the Municipal Home Rule Powers Act, the electorate of the City of Tamarac voted affirmatively on the question of whether the Charter of the City of Tamarac, as approved by the referendum held in May 1971 and as amended by the referenda held in February 1973 and March 1974, should be adopted as the Charter of the City of Tamarac. This question was presented in a referendum in June 1974 and was seemingly intended to counter the effect of the Municipal Home Rule Powers Act on the charter, which effect is hereinabove explained. I assume that the referendum was held pursuant to s.166.031, F.S., which establishes the general law procedure for amending municipal charters. In sum, therefore, although the Municipal Home Rule Powers Act nullified and repealed or converted into ordinances many provisions of the Charter of the City of Tamarac as that charter existed on October 1, 1973, the effective date of the Municipal Home Rule Powers Act, the charter was apparently restored to its original status (as subsequently amended in February 1973 and March 1974) by the referendum held in that city in June 1974. As such, I am of the opinion that it may not now be amended except as provided in s. 166.031, F.S. Finally, it should be noted that, with respect to that provision of the Charter of the City of Tamarac which provides that no ad valorem tax shall be levied on the real property within the City of Tamarac until such tax has been authorized by a majority of the qualified electors voting on the question of ad valorem taxation, s. 195.207, F.S. (enacted by s. 2, Ch. 72-360, Laws of Florida), states as follows: No municipal charter may prohibit or limit the authority of the governing body to levy ad valorem taxes or utility service taxes authorized under s. 167.431. Any word, sentence, phrase, or provision, of any special act, municipal charter, or other law, that prohibits or limits a municipality from levying ad valorem taxes within the millage limits fixed by s. 9, Art. VII of the state constitution, or prohibits or limits a municipality from levying utility service taxes within the limits fixed by s. 167.431, is hereby nullified and repealed. Applying this express statutory prohibition here, I am of the opinion that the specific charter provision in question is a limitation, if not a prohibition, on the authority of the governing body of the City of Tamarac to levy ad valorem taxes. Thus, until judicially determined to the contrary, it should be assumed that the readoption of that charter provision by the referendum held in that city in June 1974 was of no legal efficacy. See also s.218.23, F.S. Cf. AGO's 072-268 and 073-20.